# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § | |
| Plaintiff. | § § | |
| v. | § | CRIMINAL NO. A-21-M-935 |
| **Franklin Barrett Sechriest,** | § § § | |
| Defendant. | § § | |

## MR. SECHRIEST'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION

Comes now Franklin Barrett Sechriest (hereinafter "Mr. Sechriest"), by counsel, and for his Response to the Government's Motion for Detention, states as follows:

### 1. Mr. Sechriest should be released from detention because the appropriate conditions of release—namely, participation in inpatient treatment—will ensure the safety of the community, and because Mr. Sechriest is not a flight risk

The matter comes before the Court on the United States' Motion for Detention. The Bail Reform Act, 18 U.S.C. § 3141 *et. seq.*, establishes the legal framework which the Court must apply to determine whether Mr. Sechriest should be released pending trial. The Court shall order Mr. Sechriest detained *only if* (1) no condition or combination of conditions will reasonably assure the appearance of the accused at trial, or (2) no condition or combination of conditions will ensure the safety of any person and the community.[1]

### 2. Mr. Sechriest is not subject to a rebuttable presumption of detention under 18 U.S.C. § 2332b(g)(5)(B)

The Government incorrectly alleges in its motion that Mr. Sechriest is subject to a rebuttable presumption of detention pursuant to Section 2332b(g)(5)(B). Section 3142(e) provides for a rebuttable presumption of detention if there is probable cause that a person committed an offense listed in Section 2332b(g)(5)(B).[2] 18 U.S.C. § 844i (Arson) is an offense listed under

---

[1] 18 U.S.C. § 3142(e).
[2] 18 U.S.C. § 3142(e)(3)(C).

Section 2332b(g)(5)(B). However, a Section 2332b(g)(5) violation ("Federal crime of terrorism") requires not only the violation of a statute listed under Section 2332b(g)(5)(B), but also the commission of an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[3] Therefore, by referencing Section 2332b(g)(5)(B), the bail statute intended to require not only a violation of an enumerated statute, but also an offense "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" for the presumption of detention to apply.[4]

The presumption of detention does not apply because Mr. Sechriest's alleged criminal offense does not satisfy the requirements of Section 2332b(g)(5)(A). There is nothing alleged in the Criminal Complaint that supports an assertion that Mr. Sechriest's actions were "calculated to influence or affect the conduct of government by intimidation or coercion," or "to retaliate against government conduct." For this reason, Mr. Sechriest is not subject to the rebuttable presumption of detention under Section 2332b(g)(5)(B).

### 3.  Mr. Sechriest is entitled to release because he is not a flight risk or danger to any other person or the community

The Court's release decision is guided by the factors set forth in 18 U.S.C. § 3142(g). These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[5] The following factors weigh in favor of release with conditions:

#### a.  Nature and circumstances of the offense

When considering whether this factor weighs against detention, the Court must consider "whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive

---

[3] 18 U.S.C. § 2332b(g)(5)(A).
[4] 18 U.S.C. § 2332b(g)(5)(A).
[5] 18 U.S.C. § 3142(g).

device."[6] While Mr. Sechriest's alleged conduct can be characterized as a "crime of violence," the alleged conduct itself caused a structure fire, but resulted in no bodily injury to any person.

### b. History and characteristics of Mr. Sechriest

Mr. Sechriest is 18 years old.[7] He is the only child born to Vernon and Nicole Sechriest. Mr. Sechriest's father is employed as a physician surgeon and his family moved semi-frequently due to Mr. Sechriest's father's work. Mr. Sechriest lived in San Diego, California, for most of his childhood until moving to Minnesota during his adolescence.

Mr. Sechriest experienced challenging psychological and physical symptoms beginning in early childhood. His parents sought evaluation and treatment for these symptoms from some of the most renowned medical institutions in the country. Mr. Sechriest received diagnoses for: Tourette's Syndrome (2011, Johns Hopkins); Autism Spectrum Disorder, Mood Disorder, Sensory Processing Disorder, ADHD, and Anxiety Disorder (2016, Menninger); and "possible" Mast Cell Activation Syndrome (2017, Mayo Clinic).

Mr. Sechriest moved to Minnesota with his parents in 2015. Mr. Sechriest attended some in-person public and private schooling until the COVID-19 pandemic began, causing Mr. Sechriest to complete his high school diploma online. Mr. Sechriest resided in Minnesota until moving to San Marcos, Texas in 2021, to attend college at Texas State University. Mr. Sechriest was completing his first semester at Texas State when these allegations arose.

Mr. Sechriest has no prior juvenile or adult criminal history.

### c. The weight of the evidence

The charge against Mr. Sechriest do not pass muster as a federal case due to insufficient connection between the damaged property and interstate commerce. 18 U.S.C. § 844(i) makes it an offense to "maliciously damage or destroy[] ... by means of fire ... any building ... used in interstate or foreign commerce or in any activity affecting interstate commerce[.]" 18 U.S.C. §

---

[6] 18 U.S.C. § 3142(g)(1).

[7] There is widespread acceptance in the scientific and legal communities of the principle that young adults who are between the ages of 18 and 25 have reduced culpability for their actions due to a lack of brain development. There have been a substantial number of studies recognizing that the brain, most importantly the pre-frontal cortex, continues developing until the mid-twenties. *See* Mariam Arain et al., *Maturation of the Adolescent Brain*, NEUROPSYCHIATRIC DISEASE & TREATMENT 449, 449–61 (2013); Jeffrey Jensen Arnett, *Emerging Adulthood: A Theory of Development from the Late Teens Through the Twenties*, 55 AM. PSYCHOLOGIST 469 (2000); David Pimentel, *The Widening Maturi- ty Gap: Trying and Punishing Juveniles As Adults in an Era of Extended Adolescence*, 46 TEX. TECH L. REV. 71, 73 (2013); Kevin J. Holt, *The Inbetweeners: Standardizing Juvenileness and Recognizing Emerging Adulthood for Sentencing Purposes After Miller*, 92 WASH. U.L. REV. 1393, 1412 (2015).

844(i). In order to prosecute under Section 844(i), the government must show the arson has "an explicit connection with or effect on interstate commerce." *United States v. Lopez*, 514 U.S. 549, 572 (1995). A "speculative" or "attenuated" connection will not suffice to demonstrate the nexus with interstate commerce. *United States v. Collins*, 40 F.3d 95, 99, 101 (5th Cir. 1994).

The Fifth Circuit has noted that "a church does not generally function in a manner that places it in any significant relationship with interstate commerce." *United States v. Torres*, 8 F.4th 413, 416 (5th Cir. 2021). In *United States v. Johnson*, the Fifth Circuit concluded that the church's membership in an organization that sent and spent funds out of state and its purchasing of insurance from an out-of-state provider were insufficient to show that its building was used in a way that affected interstate commerce. 194 F.3d 657, 662 (5th Cir. 1999), *cert. granted, judgment vacated*, 530 U.S. 1201 (2000).[8] Other courts have found similar bases to be an insufficient connection. *See United States v. Lamont*, 330 F.3d 1249, 1255-59 (9th Cir. 2003) (finding that a church was not engaged in interstate commerce because the only evidence introduced was the church's membership in a national religious institution and that it purchased insurance policies from an out-of-state provider, purchased out-of-state goods for its own consumption, had out-of-state members, and distributed a publication from out-of-state).

The Government's allegations regarding the damaged property's connections to interstate commerce do not provide a sufficient nexus for a charge under Section 844(i). The section of the Complaint addressing the interstate commerce requirement is in paragraph 30:

> The building comprising the burned portion of the Synagogue is used in interstate commerce and used in activities affecting interstate commerce. In particular ... the Synagogue operates the CDC, which is structurally connected to the Synagogue building that was set on fire. According to the CDC's webpage on the Synagogue's website ... the CDC operates preschool programs, charges tuition for its programs, and is open to both members and non-members of the Synagogue.

Criminal Complaint, ¶ 30. The facts set forth in the Complaint are insufficient for alleging an interstate commerce connection. The Complaint does not indicate that any investigation has been conducted to substantiate the involvement of the Synagogue in activities affecting interstate commerce, other than relying on findings from a cursory review of a webpage. The Government

---

[8] The Court vacated its original opinion in light of the U.S. Supreme Court's holding in *Jones v. U.S.*, 529 U.S. 848, (2000). In its updated opinion, the Court concluded that "nothing in the Court's *Jones* opinion, or its holding there, is inconsistent with or suggests error in our prior action in vacating Johnson's plea and remanding the case for further proceedings[.]"

USA v. Franklin Barrett Sechriest
Response to Motion for Detention
Page 4 of 7

has done precisely what has been condemned by federal courts by creating a "speculative" connection to interstate to bootstrap a state-level offense to the federal level. *See United States v. Collins*, 40 F.3d 95, 99, 101 (5th Cir. 1994).

    **d.    The nature and seriousness of the danger to any person or the community**

Mr. Sechriest does not pose a danger to any other person or the community that cannot be ameliorated by appropriate pretrial condition; specifically, a condition that Mr. Sechriest enroll in and complete an intensive inpatient treatment program. Mr. Sechriest's parents have secured a provisional enrollment in an intensive inpatient facility in California. Mr. Sechriest is enthusiastic about the opportunity to engage in treatment.

### 4.    Mr. Sechriest is not a flight risk

There is no evidence that Mr. Sechriest is a flight risk. Prior to his arrest, Mr. Sechriest resided with his mother, Nicole Sechriest, in San Marcos, Texas. Mr. Sechriest lived stably for years in California and Minnesota before his move to Texas to attend college. Mr. Sechriest is 18 years old and is financially dependent on his parents. He has no independent means or ability to flee from the jurisdiction.

Additionally, Mr. Sechriest demonstrated good-faith by installing a GPS monitor, as required, by the Austin Municipal Court, which signed his Personal Recognizance bond in Travis County for the state-level charge relating to this offense.

While Mr. Sechriest has a valid U.S. passport, he has not used it since travelling to England with his family several years ago. Neither Mr. Sechriest nor his parents are currently in possession of his passport. Mr. Sechriest will sign a "Form DS-64" in order to report his passport as lost or stolen, which will place a "hold" on any future use. Mr. Sechriest is willing to take any necessary steps to ameliorate any concerns of flight risk.

**5.    There is no risk that Mr. Sechriest will obstruct or attempt to obstruct justice**

There is no evidence that Mr. Sechriest will "obstruct or attempt to obstruct justice, or attempt to threaten, injure or intimidate a prospective witness or juror," as alleged in the Government's motion.

### 6.    Conclusion

Mr. Sechriest is entitled to release because there are conditions—specifically, completion of an intensive inpatient program—that can ensure the safety of the community. Mr. Sechriest is not a flight risk. Mr. Sechriest has been provisionally accepted to a treatment facility that is enthusiastic to assist him. Ordering the continued detention an 18-year-old who did not cause physical harm to anyone, has verified mental health diagnoses that are amendable to treatment, and is open and willing to engage in the necessary treatment does not serve the ends of justice.

Richard Cofer
Texas Bar No. 24065059
*Attorney for Franklin Barrett Sechriest*
602 West 11th St., Austin, Texas, 78701
Phone: 512-200-3801
Fax: 512-727-5568
service@coferconnelly.com

**CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing has been served by CM/ECF system to the following registered counsel of record and if not registered, via U.S. Mail:

Matthew Devlin
Assistant United States Attorney
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd, Suite 334
Austin, TX 78701
Email: matt.devlin@usdoj.gov

On this the 14th day of December, 2021.

                                                                         Richard Cofer